USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/5/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHANTE KELLY, Plaintiff, -against- SEAN COMBS, DADDY'S HOUSE RECORDINGS INC., CE OPCO, LLC d/b/a COMBS GLOBAL f/k/a COMBS ENTERPRISES LLC, BAD BOY ENTERTAINMENT HOLDINGS, INC., BAD BOY PRODUCTIONS HOLDINGS, INC., BAD BOY BOOKS HOLDINGS, INC., BAD BOY HOLDINGS, INC., BAD BOY ENTERTAINMENT LLC, BAD BOY PRODUCTIONS LLC, ORGANIZATIONAL DOES 1-10, AND INDIVIDUAL DOES 1-10, Defendants. | 24-CV-8024 (VEC) OPINION & ORDER |

VALERIE CAPRONI, United States District Judge:

Plaintiff Shante Kelly alleges that Defendant Sean Combs drugged and raped her at a party in New York City. She brought a claim pursuant to New York City's Victims of Gender-Motivated Violence Protection Act (the "GMVPA"), N.Y.C. Admin. Code § 10-1104, against Combs and various businesses that he owns. *See generally* Second Am. Compl. ("SAC"), Dkt. 76. Defendants moved to dismiss. *See* Mot. to Dismiss (the "Motion" or "Mot."), Dkt. 79. The Motion is GRANTED in part and DENIED in part.

## BACKGROUND[1]

Defendant Sean Combs is a musician, record executive, and business owner. SAC ¶¶ 2–3. In December 2022, Plaintiff, an independent musician, was invited to a party hosted by

[1] For purposes of deciding this Motion, the Court assumes the truth of the well-pled factual allegations in the Second Amended Complaint. *See Hu v. City of N.Y.*, 927 F.3d 81, 88 (2d Cir. 2019).

Combs. *Id.* ¶¶ 35–37. The party took place at a "large, white, elegant residence" that was "accessed by a long, curved driveway." *Id.* ¶ 37. Although Plaintiff "was not and is not familiar with New York City," she recalls departing from New Jersey, traveling in a car for "approximately 20 to 30 minutes" and, after crossing "what she understood to be the George Washington Bridge," arriving at the house in "an upscale neighborhood of the Bronx."[2] *Id.* ¶¶ 36–37.

At the party, Plaintiff "noticed the widespread use of drugs, including cocaine, pills, and marijuana." *Id.* ¶ 42. According to Plaintiff, unspecified individuals "employed and working in conspiracy with Combs pressured all guests to consume the drugs that were being provided and served by the house staff." *Id.* Plaintiff declined. *Id.* Plaintiff also observed Combs' security and bodyguards "controll[ing] attendees' entry and exit of the home" and "following Combs and monitoring who was in proximity to him throughout the party." *Id.* ¶¶ 38–39.

Later in the evening, Combs invited Plaintiff to a separate room to "discuss the advancement of her music career in private." *Id.* ¶ 45. Plaintiff alleges that "Combs' bodyguards permitted [her] to follow Combs." *Id.* Once inside the room, Plaintiff "began feeling disoriented, as if she were slipping in and out of consciousness." *Id.* ¶ 46. At that point, she realized that her drink had been drugged; Combs then proceeded to rape and sexually assault her. *Id.* ¶¶ 46–47.

---

[2] In her earlier pleadings, Plaintiff alleged that the party took place in Manhattan. *See* Compl., Dkt. 1 ¶ 1; First Am. Compl. ("FAC"), Dkt. 71 ¶ 35. In their motion to dismiss the original Complaint, Defendants argued that no such residence exists within Manhattan, thus rendering it implausible that the party (and Plaintiff's alleged assault) took place in Manhattan. Dkt. 57 at 4–6. In response, Plaintiff's attorneys admitted that "[i]t may be the case that the assault did not occur 'in Manhattan' as pleaded," noted that Plaintiff's memory "may be unclear as to appearance of the residence itself or as to the exact location of the residence," and essentially conceded that counsel had not conducted a reasonable inquiry to verify Plaintiff's account. Dkt. 69 at 4–5. Because Plaintiff's counsel "appear[ed] entirely unsure whether the allegations . . . about the location of the party [were] accurate," the Court granted Defendants' motion to dismiss, without prejudice. Dkt. 73 at 5 ("[T]he Court can only deny [Defendants' original motion to dismiss] if it can find that Plaintiff's claims are 'plausible,' not merely possible. It cannot make such a finding when Plaintiff's own lawyers have represented that a material allegation . . . was based solely on the recollection of an individual whose memory 'may be' unreliable." (internal citations omitted)).

Plaintiff filed this action, bringing a single claim pursuant to the GMVPA. *See id.* ¶¶ 52–58. She sued Combs and various businesses he owns: Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Corporate Defendants"). Defendants moved to dismiss Plaintiff's Second Amended Complaint.[3] *See* Mot.

LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At this stage, the Court draws all reasonable inferences in the light most favorable to the plaintiff, *see Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted), and "draw[s] on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679. The Court is not required, however, "to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

DISCUSSION

**I. Plaintiff's Second Amended Complaint Does Not Directly Contradict Her Prior Pleadings**

Plaintiff's First Amended Complaint alleged that she was "drugged and raped by Combs at a house party in Manhattan." FAC ¶ 1. The Court held that Plaintiff's claim under the GMPVA, as alleged in her prior pleadings, was not plausible because Plaintiff's lawyers appeared to concede that they did not conduct a reasonable investigation into the veracity of

[3] As previously noted, *see supra* n.2, the Court granted Defendants' prior motion to dismiss Plaintiff's First Amended Complaint with leave to amend. *See* Dkt. 73 at 6–7.

Plaintiff's account and that Plaintiff's memory as to the location of the party "may be unclear." Dkt. 73 at 5; *see also supra* n.2. That said, the Court granted Defendants' prior motion to dismiss without prejudice in recognition that "[i]t is possible that Plaintiff may, upon further investigation, be able to allege additional facts to allow the Court plausibly to infer that . . . the events alleged in the Amended Complaint occurred in New York City." Dkt. 73 at 6.

Plaintiff's Second Amended Complaint seems to have remedied the issue that plagued her initial pleadings. She now claims that the alleged incident occurred in the Bronx, New York, because she recalls traveling from Paterson, New Jersey, into New York, and "crossing what she understood to be the George Washington Bridge." SAC ¶¶ 36–37. Plaintiff claims she is not familiar with New York, and "is now informed and believes that the house is located within an upscale neighborhood of the Bronx." *Id.* ¶ 38. These additional allegations are sufficient to push Plaintiff's claims from the realm of the "possible" into the realm of the "plausible," as required by *Twombly*, *Iqbal*, and their progeny.

Nonetheless, Defendants argue Plaintiff's amended allegations should be disregarded because they "directly contradict" her prior pleadings. Mot. at 1–2, 6. Defendants contend that the alleged location of the assault (changed from Manhattan to the Bronx) is "materially inconsistent" with her prior complaint. *Id.* at 8. Defendants further argue that Plaintiff's allegations are not credible because the change of location was made only after the Court dismissed her prior pleadings, and because Plaintiff has provided no explanation for why she now believes the house was in the Bronx.[4] *Id.* at 7.

[4] Although Plaintiff's Second Amended Complaint states that she "is now informed and believes" that the house was in the Bronx, Defendants argue that these words are insufficient to revive her credibility, given that she has maintained that she was assaulted in Manhattan for over a year (and throughout an entire round of dispositive motion practice). Mot. at 9–10.

To be sure, the Court may disregard amended pleadings if "a plaintiff blatantly changes h[er] statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in [the] original complaint." *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) *aff'd*, 356 F. App'x 535 (2d Cir. 2009) (summary order). Inconsistencies alone, however, do not constitute a direct contradiction so long as the modification at issue does not "entail[] an essential element of plaintiff's cause of action without which plaintiff could not make out a *prima facie* case," *Streit v. Bushnell*, 424 F. Supp. 2d 633, 639 n.4 (S.D.N.Y. 2006), "and thus d[oes] not have a 'dispositive effect'" on the lawsuit, *Kilkelly v. Law Office of Cushner & Garvey, LLP*, No. 08-CV-588 (KMK), 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012). "Where . . . an amended pleading is not in direct contradiction with the original pleading . . . [c]ourts apply the general rule recognizing that an amended pleading completely replaces the original pleading." *Vasquez v. Reilly*, 15-CV-9528 (KMK), 2017 WL 946306, at *3 (S.D.N.Y. Mar. 9, 2017) (internal quotation marks omitted).

The Court disagrees that the allegations in the Second Amended Complaint directly contradict Plaintiff's prior pleadings. Although inconsistent with her prior allegations with respect to the borough in which the assault occurred, the change from Manhattan to the Bronx has no impact on whether the Plaintiff can make out a *prima facie* case pursuant to the GMVPA, as both locales are in New York City for purposes of the statute.[5] Plaintiff's allegations, both former and current, satisfy the GMPVA's jurisdictional requirement. Indeed, that is precisely why the Court granted Plaintiff leave to amend—so that she could investigate where the alleged

---

[5] The GMVPA, like all provisions of the New York Administrative Code, applies to conduct that occurs in New York City. N.Y.C. Admin. Code § 2-201 (New York Administrative Code's "jurisdiction and powers" extend only to the five boroughs of New York City); *see also Bass v. World Wrestling Fed'n Ent., Inc.*, 129 F. Supp. 2d 491, 506 (E.D.N.Y. 2001) ("Both state and local law limits the Administrative Code's application to acts committed within New York City.").

assault took place and add some facts that would allow the Court plausibly to infer that her claims arose in one of the five boroughs comprising New York City.[6] Regardless of how minimal an explanation was given, Plaintiff (or her counsel) seems to have investigated further, and her amended complaint reflects these new findings.[7] Accordingly, the Court finds that Plaintiff's amended allegations are facially sufficient to overcome the modest plausibility threshold; the Court accepts the Second Amended Complaint, which replaces all previous pleadings.

## II. The Second Amended Complaint States a Claim Against Combs

The GMVPA provides that "any person claiming to be injured by a party who commits . . . a crime of violence motivated by gender has a cause of action against such party." N.Y.C. Admin. Code § 10-1104. To establish a claim pursuant to the GMVPA, Plaintiff must show "(1) the alleged act constitutes a misdemeanor or felony against the plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of plaintiff's gender; (4) in part because of animus against plaintiff's gender; and (4) resulted in injury." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 455 (S.D.N.Y. 2018). Defendants do not meaningfully address the merits of Plaintiff's claim against Combs.

Plaintiff has adequately alleged the elements of a claim pursuant to the GMVPA. Plaintiff claims that Combs drugged and raped her, SAC ¶¶ 46–47, and, as a result, she suffered

---

[6] In order for venue to be correct, the assault must have taken place in one of the two boroughs over which this Court has jurisdiction: Manhattan or the Bronx.

[7] Defendants suggest that Plaintiff "blatantly change[d] [her] statement of the facts in order to respond to" the Court's prior dismissal order. *Colliton*, 2008 WL 4386764, at *6; *see* Mot. at 6–7 (noting that, thirteen months after the Court granted Defendants' motion to dismiss, Plaintiff modified her claim to allege her assault occurred in the Bronx). This is not inherently problematic, however. The Court's prior order explicitly contemplated that Plaintiff would investigate further and "be able to allege additional facts to allow the Court plausibly to infer that . . . the events alleged in [her prior pleadings] occurred in New York City." Dkt. 73 at 6. Plaintiff has done exactly that; albeit, the new allegations indicate that the assault occurred in a different part of New York City than originally pled. Whether the change in locale will be fatal to her credibility as the case proceeds remains to be seen.

physical and emotional injuries, *see generally* SAC. In determining whether an act is "motivated by gender," courts must determine whether it is "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." N.Y.C. Code § 8-903. An allegation of rape is sufficient to establish the animus element, as "[m]alice or ill will based on gender is apparent from the alleged commission of the act itself," and "[a]nimus inheres where consent is absent." *Breest v. Haggis*, 180 A.D.3d 83, 92–93 (1st Dep't 2019); *see also Baldwin v. TMPL Lexington LLC*, No. 23-CV-9899 (PAE), 2024 WL 3862150, at *13 (S.D.N.Y. Aug. 19, 2024) ("Courts in this District have recognized *Breest*'s significance on this open doctrinal point."); *Doe v. Gross*, No. 23-CV-6325 (JPC), 2024 WL 3729007, at *8 (S.D.N.Y. Aug. 7, 2024) (recognizing that "[t]he New York Supreme Court's Appellate Division, First Department, . . . clarified [in *Breest*] that where rape and sexual assault are alleged, malice or ill will based on gender is apparent from the alleged commission of the act itself").

As such, Plaintiff has satisfied her burden of alleging that the act was perpetrated because of her gender, and she has also adequately alleged the other elements necessary to state a plausible claim pursuant to the GMVPA against Combs.

## III. The Second Amended Complaint Fails to State a Claim Against the Corporate Defendants

Plaintiff's First Amended Complaint alleged that the Corporate Defendants were liable under the GMVPA because individuals "employed and working in conspiracy with Combs pressured all guests to consume the drugs that were being provided and served by the house staff." FAC ¶ 39. The Court found that even if a relationship between the individuals and the Corporate Defendants could be inferred, "the allegation [was] too vague and conclusory to form the basis for corporate liability." Dkt. 73 at 3. The Court granted Defendants' motion to dismiss the First Amended Complaint against the Corporate Defendants without prejudice, however, to

allow Plaintiff to investigate further and allege facts that would allow the Court plausibly to infer the Corporate Defendants' liability. *Id.* at 6.

In her Second Amended Complaint, Plaintiff has added the following non-conclusory allegations related to the Corporate Defendants: "[T]he party was swarming with Combs' security and body guards, who among other things controlled attendee's entry and exit"; "Combs' security within the party follow[ed] Combs and monitor[ed] who was in proximity to him"; "Combs' security and bodyguards were employed by one or more of the [Corporate Defendants]"; and "Combs' body guard permitted Plaintiff to follow Combs." SAC ¶¶ 38–40, 45.

These allegations, even when taken together and viewed in the light most favorable to the Plaintiff, still fail plausibly to state a claim against the Corporate Defendants. The GMVPA permits "any person claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender" to bring a civil action against such parties.[8] *See* N.Y.C. Admin. Code § 10-1104. The additional facts alleged in the Second Amended Complaint alone do not plausibly suggest that the Corporate Defendants "commit[ted], direct[ed], enable[d], participate[d] in, or conspire[d]" in Plaintiff's alleged assault necessary to form the basis for corporate liability. *Id.* The allegations merely show that the security and bodyguards were acting within the scope of their employment. Plaintiff has provided no factual, non-conclusory link that would allow the Court to infer that the Corporate Defendants enabled Combs to commit a sexual assault by merely by doing what they were (presumably) hired to do—*i.e.*, protect Combs' physical person. In other words, there is insufficient connective tissue between the Corporate Defendants doing their jobs and the alleged

[8] In 2022, the New York City Council amended the GMVPA to extend liability to corporate defendants. *See Tucker v. Combs*, No. 24-CV-7772 (JPO), 2026 WL 654390, at *2 (S.D.N.Y. Mar. 9, 2026) (slip op.).

assault. Again, while it may be possible that the employees were aware of Combs' actions and acted to ensure that he could freely assault women, the Defendants' Motion to Dismiss is only without merit if Plaintiff's factual allegations make the claim plausible, not merely possible. *Twombly*, 550 U.S. at 570. Plaintiff's reliance on the hope that discovery can flesh out this claim is misguided because the purpose of discovery is "to find out additional facts about a well-ple[d] claim, not to find out whether such a claim exists." *Stoner v. Walsh*, 772 F. Supp. 790, 800 (S.D.N.Y. 1991). The additional allegations fail to allege that the Corporate Defendants engaged in any conduct sufficient to incur liability pursuant to the GMVPA.

In short, Plaintiff has not adequately alleged a claim pursuant to the GMVPA against the Corporate Defendants.

## CONCLUSION

The Second Amended Complaint plausibly states a claim against Combs under the GMVPA. Plaintiff, however, has failed to assert any allegations through which the Court plausibly can infer that the Corporate Defendants engaged in any misconduct pursuant to the GMVPA. Accordingly, Defendants' Motion to Dismiss is GRANTED as to the Corporate Defendants and DENIED as to Combs. Because she has already had two bites at the apple, the Court will not grant Plaintiff leave to further amend her complaint. Plaintiff's claims against the Corporate Defendants are, therefore, DISMISSED WITH PREJUDICE. The Clerk of Court is respectfully directed to terminate the Corporate Defendants as parties to this action and to terminate the open motion at Dkt. 79.

It is further ORDERED that, not later than **Wednesday, August 26, 2026**, the parties must meet and confer and file a proposed Civil Case Management Plan and Scheduling Order (the template for which is available at https://nysd.uscourts.gov/hon-valerie-e-caproni).

**SO ORDERED.**

**Date: August 5, 2026**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**